UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| A. R.-W., *a minor, by Parent, Emily Reynolds*, | ) ) | |
| *Plaintiff*, | ) ) | |
| *vs.* | ) ) | 1:13-cv-369-JMS-DKL |
| CAROLYN W. COLVIN, *Acting Commissioner of the Social Security Administration*, *Defendant*. | ) ) ) ) ) | |

### ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff A. R.-W., by way of her parent, Emily Reynolds, appeals the cessation of her Supplemental Security Income ("SSI") disability benefits. A. R.-W.'s initial application for SSI was approved in April 2008, but in February 2010, the Social Security Administration ("SSA") notified her of its determination that she was no longer disabled. [Dkt. 13-4 at 2-5.] Ultimately, Administrative Law Judge Monica LaPolt (the "ALJ") held a hearing and issued a decision in November 2011, concluding that A. R.-W. was not disabled as of February 1, 2010 and was no longer entitled to SSI benefits. [Dkt. 13-2 at 35.] The Appeals Council denied a request for review, rendering the ALJ's decision the final decision of the Defendant, Commissioner of the Social Security Administration ("Commissioner") for the purposes of judicial review. 20 C.F.R. § 404.981. Ms. Reynolds has filed this action on behalf of A. R.-W. under 42 U.S.C. § 405(g), requesting that the Court review the ALJ's denial.[1]

---

[1] The Court commends Ms. Reynolds' counsel on the clarity of his briefing and his understanding of the interaction between various issues in this case. [*See, e.g.*, dkt. 23 at 4 (arguing that the Court should award benefits based on the first alleged error and that if it does so, it need not address the remaining issues), at 5 (conceding that while the ALJ may have erred at step three, any error on that basis was harmless).]

# I.
## RELEVANT BACKGROUND

A. R.-W. was born prematurely in January 2008. [Dkt. 13-3 at 2.] In March 2008, her mother, Ms. Reynolds, filed for SSI disability benefits on A. R.-W.'s behalf. [*Id.*] The application was approved in April 2008 due to A. R.-W.'s low birth weight for her gestational age. [*Id.*]

On February 1, 2010, the SSA notified Ms. Reynolds that as of that date it no longer deemed A. R.-W. to be disabled and that her SSI benefits would stop. [Dkt. 13-4 at 2-6.] Ms. Reynolds asked the SSA to reconsider its decision, and on November 10, 2010, a Disability Hearing Officer from the Disability Determination Bureau held a hearing. [*Id.* at 15.] The Disability Hearing Officer affirmed the denial of benefits. [Dkt. 13-3 at 4.]

Ms. Reynolds requested that an ALJ hear A. R.-W.'s case, and the ALJ held a hearing in September 2011. [Dkt. 13-2 at 59-85.] In November 2011, the ALJ issued a decision affirming the cessation of benefits. [*Id.* at 18-35.] Ms. Reynolds requested that A. R.-W.'s case be heard by the Appeals Council, but that request was denied in January 2013. [*Id.* at 2-7.] In March 2013, Ms. Reynolds filed this lawsuit on behalf of A. R.-W., asking this Court to review the cessation of A. R.-W.'s benefits. [Dkt. 1.]

The briefs supporting Ms. Reynolds' request for review detail facts regarding A. R.-W.'s medical conditions and treatment that she has received. [Dkts. 23; 27.] The Commissioner does not dispute the facts presented. [Dkt. 26.] Because resolution of the relevant issues does not require the level of factual development set forth in the briefs, and because those facts implicate sensitive and otherwise confidential information concerning A. R.-W., the Court will simply incorporate the facts by reference herein and articulate material facts as needed to resolve the parties' arguments.

## II.
### APPLICABLE STANDARD OF REVIEW

For a child to be considered disabled, it must be shown that she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).  A child's continued eligibility for benefits must be reviewed periodically.  20 C.F.R. § 416.994a(a).  All submitted evidence will be considered and decisions will be made "on a neutral basis, without any initial inference as to the presence or absence of disability being drawn from the fact that [the child has] been previously found disabled." 20 C.F.R. § 416.994a(a)(2).

To decide whether a child's disability continues or has stopped, the SSA uses a five-step process.  First, it must be determined whether there has been medical improvement in the child's impairment or impairments since the last favorable decision.  20 C.F.R. § 416.994a(b)(1).  If there has been no medical improvement, typically the child is still disabled.  *Id.*

If there has been medical improvement, the second step is to determine if the impairment or impairments still meet or equal the severity of the listed impairment that were met or equaled before.  20 C.F.R. § 416.994a(b)(2).  If the impairment or impairments still meet or equal the severity of that listed impairment, typically the child is still disabled.  *Id.*

If the impairment no longer meets or equals the severity of the previously met listed impairment, the third step is to determine if the child is currently disabled.  20 C.F.R. § 416.994a(b)(3). In making that determination, all impairments the child now has will be considered.  *Id.*  Specifically, it must be determined whether her current impairment or impairments are severe.  20 C.F.R. § 416.994a(b)(3)(i).  If the impairments are not severe, the child is no longer disabled.  *Id.*

If the current impairments are severe, the fourth step is to determine whether they meet or medically equal the severity of a listed impairment. 20 C.F.R. § 416.994a(b)(3)(ii). If the child meets or medically equals a listed impairment, the child will typically be considered disabled. *Id.*

If the child does not meet or medically equal a listing, the fifth step is to determine if the child's condition "functionally equals" the listings. 20 C.F.R. § 416.994a(b)(3)(iii). To determine if a child's impairment or combination of impairments functionally equals a listing, there are six broad areas of functioning or "domains" used to determine functional equivalence: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for self; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). Generally, a child establishes functional equivalence to a listing by showing "'marked' limitations in two domains, or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a). If a child does not have marked limitations in at least two domains, or extreme limitations in one domain, she does not functionally equal a listing and is not disabled. 20 C.F.R. § 416.924(d)(2). But if a child's current impairment or impairments functionally equal a listing, the child will typically be considered disabled. 20 C.F.R. § 416.994a(b)(iii).

This Court's role in reviewing a decision of the SSA is limited to ensuring that the ALJ applied the correct legal standards and [that] substantial evidence supports the ALJ's findings. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the

"ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). Moreover, "[a]n ALJ may not select and discuss only that evidence that favors [her] ultimate conclusion, but must articulate, at some minimum level, [her] analysis of the evidence to allow the [Court] to trace the path of [her] reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995) (alteration in original).

If the ALJ committed no legal error and substantial evidence supports the ALJ's decision, the Court must affirm the denial of benefits. Otherwise, the Court must generally remand the matter back to the SSA for further consideration; only under rare circumstances can the Court actually order an award of benefits. *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

### III.
### THE ALJ'S DECISION

At step one, the ALJ concluded that A. R.-W. had medically improved since the decision awarding her benefits in April 2008. [Dkt. 13-2 at 21.] Ms. Reynolds does not challenge this conclusion. [Dkt. 23 at 4.]

At step two, the ALJ found that A. R.-W. no longer met or medically equaled the listing for low birth weight that she met at the time her benefits were approved in April 2008. [Dkt. 13-2 at 21.] Ms. Reynolds does not challenge this conclusion. [Dkt. 23 at 4.]

At step three, the ALJ found that A. R.-W.'s only severe impairment is a seizure disorder. [Dkt. 13-2 at 28.] Although Ms. Reynolds believes that the ALJ erred by not finding some of A. R.-W.'s other impairments to be severe, she is not challenging the ALJ's determination because the ALJ proceeded to step four with analysis. [Dkt. 23 at 5.] Thus, Ms. Reynolds believes that any error in this step was harmless. [*Id.*]

At step four, the ALJ found that A. R.-W. did not meet or medically equal a listed impairment. [Dkt. 13-2 at 28-29.] Ms. Reynolds challenges this conclusion on appeal, arguing that

the ALJ erred by not finding that A. R.-W. met Listing 100.02(B) for a growth impairment. [Dkt. 23 at 5.]

At step five, the ALJ found that A. R.-W. did not have an impairment or combination of impairments that functionally equaled a listing. [Dkt. 13-2 at 29.] Therefore, the ALJ concluded that A. R.-W. was no longer disabled as of February 1, 2010. [*Id.* at 35.] Ms. Reynolds challenges this determination. [Dkts. 23 at 16-19.]

## IV.
### DISCUSSION

Ms. Reynolds' main argument is that the ALJ committed reversible error by finding that A. R.-W.'s condition does not meet Listing 100.02(B), which is the listing for a growth impairment. [Dkt. 23 at 12-16.] Ms. Reynolds points to evidence that she contends shows that A. R.-W. meets each element of that listing and argues that the ALJ erred by ignoring evidence and finding that A. R.-W. does not have an additional medically determinable impairment, as required by Listing 100.02(B). [*Id.*]

In her response, the Commissioner contends that the ALJ's analysis of Listing 100.02(B) comports with the SSA's reasonable interpretation of the listing's requirements, as set forth by the SSA's Program Operations Manual System ("POMS"). [Dkt. 26 at 2-3.] The Commissioner also argues that Ms. Reynolds did not meet her burden to show that A. R.-W.'s growth impairment was related to a specific medically determinable impairment and met the listing's "persistence" requirement. [*Id.* at 3-8.]

In her reply, Ms. Reynolds argues that the Commissioner's *post hoc* reliance on the POMS violates the *Chenery* doctrine and cannot be considered because the Commissioner can only rely on reasoning embraced by the ALJ. [Dkt. 27 at 2 (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943)).] Ms. Reynolds argues that nothing in the ALJ's opinion commented on

A. R.-W.'s reduced growth velocity and, moreover, the POMS does not have legal force and cannot be controlling. [Dkt. 27 at 3.] Ms. Reynolds also contends that she has proven that A. R.-W.'s growth impairment was related to a specific medically determinable impairment—specifically, A. R.-W.'s diagnoses for failure to thrive and gastroesophageal reflux disease ("GERD"). [*Id.* at 5-6.] Ms. Reynolds points to evidence in the record that she contends shows the persistence of A. R.-W.'s height below the third percentile. [*Id.* at 7.]

### A. Listing 100.02(B)

A child's impairment or combination of impairments meets a listing only if all of the listing's criteria are satisfied. 20 C.F.R. § 416.925(c)(3), (d). The impairment must have lasted or be expected to last for a continuous period of at least twelve months, which is referred to as the duration requirement. 20 C.F.R. § 416.909.

Social Security Ruling ("SSR") 96-6p provides that the ALJ "is responsible for deciding the ultimate legal question of whether a listing is met or equaled." 1996 SSR LEXIS 3, *7-8. An ALJ is required to build an accurate and logical bridge from the evidence to her conclusions so that the claimant may be afforded meaningful review of the SSA's ultimate findings. *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003).

Listing 100.02 provides:

> Growth impairment, considered to be related to an additional specific medically determinable impairment, and one of the following:
>
> A. Fall of greater than 15 percentiles in height which is sustained;[2] or
>
> B. Fall to, or persistence of, height below the third percentile.

---

[2] Ms. Reynolds only contends that A. R.-W. meets Listing 100.02(B), not 100.02(A). [Dkt. 27 at 2.] The Court need not address the Commissioner's citation to out-of-Circuit precedent that interprets Listing 100.02(A) because Ms. Reynolds does not contend that A. R.-W. meets that listing. [Dkt. 26 at 3 (citing *Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1005 (9th Cir. 2006)).]

The ALJ concluded that A. R.-W.'s conditions did not meet Listing 100.02(B) for the following reasons:

> The claimant's attorney stated the claimant's growth impairment meets the criteria of Section 100.02(B). However, I find the claimant's developmental delays do not meet the aforementioned listing as depicted through counsel. This section requires that the growth impairment be related to an additional specific medically determinable impairment and . . . B. Fall to, or persistence of, height below the third percentile. While the evidence indicates the claimant's height was below the third percentile in September 2010 (Ex. 19B at 12), there is no evidence that supports the persistence of this percentile. Furthermore, the claimant's overall development has improved with therapy and there is no additional medically determinable impairment as required by the listing (Ex. 37F at 4, 5, 7).

[Dkt. 13-2 at 29.]

### B. ALJ's Challenged Conclusions Regarding Listing 100.02(B)

Ms. Reynolds specifically challenges two of the ALJ's conclusions regarding Listing 100.02(B): 1) that there is no evidence that A. R.-W.'s height below the third percentile has been persistent, and 2) that there is no evidence of an additional medically determinable impairment as required by Listing 100.02(B).

#### 1) Persistence of Height Below Third Percentile

With regard to the persistence element of Listing 100.02(B), the ALJ concluded that although A. R.-W.'s height was below the third percentile in September 2010, "there is no evidence that supports the persistence of this percentile." [Dkt. 13-2 at 29 (citing dkt. 13-4 at 66).] Ms. Reynolds argues that this conclusion ignores evidence in the record. [Dkts. 23 at 14-15; 27 at 14.] Ms. Reynolds includes a helpful chart in her opening brief summarizing the evidence of A. R.-W.'s height between March 2008 and June 2011, [dkt. 23 at 14], the accuracy of which the

Commissioner does not dispute.³ The Commissioner also does not dispute that the measurements cited in the chart uniformly put A. R.-W. below the third percentile for height. That conclusion is supported by additional evidence in the record, such as a treating physician's report referenced by the ALJ, [dkt. 13-2 at 29 (citing dkt. 13-4 at 66)], concluding that as of September 2010, A. R.-W. "does seem to be following a [growth] curve but her curve is less than the 3rd percentile." [Dkt. 13-4 at 66 (report from Dr. Lisa McGuire).]

To support the ALJ's conclusion that A. R.-W. did not proffer evidence of persistence to satisfy Listing 100.02(B), the Commissioner relies heavily on her argument that "the agency has determined that the listing requires more than" what is set forth in Listing 100.02(B). [Dkt. 26 at 2.] The Commissioner argues that "the agency's definition of 'persistence'" is set forth in the POMS and requires "reduced linear growth velocity," which A. R.-W. allegedly does not meet since she "seem[s] to be following a [growth] curve." [*Id.* at 7-8; *see also* POMS DI 24598.020, *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0424598020.]

The Court agrees with Ms. Reynolds that the Commissioner's reliance on the additional criteria set forth in the POMS violates the well-established *Chenery* doctrine, "which forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced." *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010). The relevant portion of the ALJ's decision does not mention the POMS or appear to rely on the additional requirement of reduced linear growth velocity. In fact, the language of the ALJ's opinion suggests that the ALJ was focused on determining whether A. R.-W.'s height consistently fell below the third percentile, not

---

³ Ms. Reynolds submitted a similar chart to the ALJ. [Dkt. 13-4 at 68.] Ms. Reynolds deleted an apparent erroneous measurement taken on June 10, 2011 because A. R.-W. measured 2.6 centimeters shorter two weeks later. [Dkt. 23 at 15.] The Commissioner does not object or respond to this omission. The Court is not including a copy of the chart in this opinion because it contains A. R.-W.'s medical information and the Commissioner does not dispute that it shows that A. R.-W.'s height has consistently been below the third percentile.

whether she followed a growth curve. [Dkt. 13-2 at 29 (ALJ's conclusion that "[w]hile the evidence indicates the claimant's height was below the third percentile in September 2010, there is no evidence that supports the persistence of this percentile.") (citation omitted).] Moreover, as the Commissioner concedes, [dkt. 26 at 2-3], the POMS is not binding and "has no legal force," *see Parker ex rel. Lamon v. Sullivan*, 891 F.2d 185, 190 (7th Cir. 1989) ("The POMS manual has no legal force and therefore the standard cannot be controlling in this case."). For these reasons, the Court will not further address the Commissioner's argument to the extent that it relies on the POMS or the "agency's interpretation of the listing" through the POMS. [Dkt. 26 at 2-8.]

The Commissioner presents no other arguments supporting the ALJ's conclusion that there is no evidence after September 2010 that A. R.-W.'s height fell below the third percentile. But as A. R.-W. points out, there are two undisputed entries in the record showing that A. R.-W.'s height still fell below the third percentile after that date, in contravention of the ALJ's conclusion. [Dkts. 13-4 at 57 (June 2011), 62 (January 2011); 23 at 14 (chart detailing evidence with corresponding percentile information).] Because the ALJ did not address this material evidence, the Court agrees with Ms. Reynolds that the ALJ erred by concluding that there was no evidence that A. R.-W.'s height did not persist below the third percentile after September 2010.

### 2) Additional Medically Determinable Impairment

Although the Court has already concluded that the ALJ erred in one respect regarding her analysis of Listing 100.02(B), it must address Ms. Reynolds' other asserted error with the ALJ's listing analysis because a child's impairment or combination of impairments meets a listing only if *all* of the listing's criteria are satisfied. 20 C.F.R. § 416.925(c)(3), (d).

Ms. Reynolds challenges the ALJ's conclusion that there is no evidence in the record that A. R.-W. has an additional medically determinable impairment as required by Listing 100.02(B).

[Dkt. 23 at 13.] Ms. Reynolds points to records diagnosing A. R.-W. with, among other things, failure to thrive and GERD. [*Id.*]

In response, the Commissioner argues that failure to thrive is not an acceptable additional diagnosis, citing an article concluding that in 80% of cases, such a diagnosis can be attributed to environmental neglect instead of an organic cause. [Dkt. 26 at 5.] The Commissioner further asserts that it was A. R.-W.'s burden to prove that any additional medical impairments, such as GERD, were responsible for her growth impairment. [*Id.* at 6.]

In her reply, Ms. Reynolds points out that if there is a question about the causality between A. R.-W.'s failure to thrive and GERD diagnoses and her growth impairment, it can be resolved on remand with the help of a medical expert if necessary. [Dkt. 27 at 6.]

The evidence in the record shows that a pediatrician and psychiatrist who performed an examination of A. R.-W. at the request of the Disability Determination Bureau diagnosed A. R.-W. with, among other things, failure to thrive and GERD. [Dkt. 13-10 at 109.] Ms. Reynolds also points to multiple other records confirming A. R.-W.'s GERD diagnosis. [Dkt. 23 at 13 (citing ten different records).] The Disability Determination Bureau hearing officer also held that failure to thrive and GERD diagnoses were consistent with A. R.-W.'s medical history. [Dkt. 13-4 at 27.]

It is undisputed that the ALJ did not acknowledge the evidence of A. R.-W.'s failure to thrive and GERD diagnoses when concluding that A. R.-W. did not have an additional medically determinable impairment to meet Listing 100.02(B). [Dkt. 13-2 at 29.] This was reversible error. *See Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003) ("Without even a mention, we are left to wonder whether the [favorable evidence] was even considered."). Although the Commissioner does not consider a failure to thrive diagnosis adequate for purposes of

an additional impairment for Listing 100.02(B) on appeal, such *post hoc* rationale cannot save the ALJ's failure to analyze that evidence at all, especially since the article on which the Commissioner relies concludes that 20% of failure to thrive diagnoses could have an organic cause. [Dkt. 27 at 6.]

The parties dispute the level of causality Listing 100.02(B) requires between the additional specific medically determinable impairment and the growth impairment, but the language of the listing itself confirms that there must be a related connection between the two. *See* Listing 100.02 ("Growth impairment, considered to be *related to* an additional specific medically determinable impairment . . . .") (emphasis added). Because the ALJ did not acknowledge A. R.-W.'s failure to thrive or GERD diagnoses in her analysis of Listing 100.02(B), she did not examine whether those diagnoses were related to A. R.-W.'s growth impairment for purposes of the listing. On remand, the ALJ should be sure to address this evidence and, if necessary, obtain an expert opinion to do so. *See Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000) ("If the ALJ believes that [s]he lacks sufficient evidence to make a decision, [s]he must adequately develop the record and, if necessary, obtain expert opinions.").

### C. Remaining Issues

Ms. Reynolds asks the Court to conclude that based on the evidence in the record, A. R.-W. meets all of the requirements of Listing 100.02(B) and, thus, the Court should order a continuation of her benefits at this time. [Dkt. 23 at 2, 16.] Although the Court agrees with Ms. Reynolds that the ALJ erred in its analysis surrounding Listing 100.02(B), it cannot conclude that A. R.-W. meets the requirements of that listing such that it can order her benefits to resume. Among other things, it is unclear whether A. R.-W.'s additional medically determinable impairments are related to the growth impairment, as the listing requires. This is not one of those rare

circumstances where the Court can actually order an award. *See Briscoe*, 425 F.3d at 355 ("[O]nly under rare circumstances can the Court actually order an award of benefits.").

Ms. Reynolds presents additional grounds in favor of remand, should the Court not award benefits on the Listing 100.02 error. [Dkt. 23 at 16-19 (arguing that the ALJ's decision should be vacated because A. R.-W. "functionally equals the listings [and] the ALJ overlooked two material assessments").] Ms. Reynolds succinctly summarizes evidence that she contends that ALJ ignored in deciding that A. R.-W. did not functionally equal a listing. [*Id.* at 18-19 (arguing that the ALJ erred by not considering findings from A. R.-W.'s January 2010 First Steps evaluation and November 2010 Bartholomew Special Services Cooperative assessment).] Should the ALJ determine that A. R.-W. does not meet Listing 100.02(B) on remand, the ALJ should make sure to address the evidence Ms. Reynolds cites regarding functional equivalence.

## V.
### CONCLUSION

For the reasons detailed herein, the Court **VACATES** the ALJ's decision terminating A. R.-W.'s SSI benefits and **REMANDS** this matter for further proceedings. Final judgment will issue accordingly.

11/18/2013

*[signature]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Timothy J. Vrana
tim@timvrana.com